IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ACCESS INFORMATION MANAGEMENT OF HAWAII, LLC, ) ) ) | CIVIL NO. 10-00622 JMS/KSC |
| ) Plaintiff, ) ) | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |
| vs. ) ) | |
| SHRED-IT AMERICA, INC., SHRED-IT USA, INC., VINCENT DEPALMA, JEFF REIS, JANINE LOZANO, DAVID EPSTEIN, PHIL RICO AND DOE DEFENDANTS 1-40, ) ) ) ) ) ) | |
| Defendants. ) _____ ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

**I. INTRODUCTION**

On September 21, 2010, Plaintiff Access Information Management of Hawaii, LLC ("Access" or "Plaintiff") purchased certain assets from Shred-It Hawaii ("SIH").  Plaintiff asserts that since this purchase, SIH's former franchisor Shred-It America, Inc. ("SIA") and its agents Vincent Depalma, Jeff Reis, Janine Lozano, David Epstein, and Phil Rico (collectively, "Defendants") have engaged in unfair methods of competition and misconduct.  Plaintiff therefore filed this action in the First Circuit Court of the State of Hawaii alleging various state law claims against Defendants stemming from this alleged misconduct.

SIA subsequently removed the action to this court. While the Complaint alleges only state law claims and there is no diversity jurisdiction, SIA asserts that the court has jurisdiction because this action relates to SIA and SIH's 1998 Franchise Agreement, which includes an arbitration provision governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). SIA asserts that it properly removed this action pursuant to 9 U.S.C. § 205, which allows removal of actions relating to agreements falling under the New York Convention.

On October 27, 2010, Plaintiff filed a Motion for Temporary Restraining Order or in the Alternative to Remand ("Plaintiff's Motion"). On the issue of remand, Plaintiff argues, among other things, that the Franchise Agreement does not fall under the New York Convention because it governs a wholly domestic relationship between SIA and SIH. On October 29, 2010, SIA filed an Opposition, and Plaintiff filed a Reply on November 1, 2010. Based on the following, the court (as it must) addresses the jurisdictional issue first and finds no basis for federal jurisdiction. The court therefore GRANTS Plaintiff's Motion and REMANDS this action to the First Circuit Court of the State of Hawaii.

///

///

## II. FACTUAL BACKGROUND

### A. Litigation History

This action is one of three related actions currently pending in the District of Hawaii. On September 22, 2010, Access and SIH filed an action in state court against SIA asserting that the Franchise Agreement is void as violative of Hawaii law and seeking declaratory and injunctive relief. SIA removed the action to this court, and Access subsequently dismissed the action without prejudice. *See Access Info. Mgmt. of Haw., LLC et al. v. Shred-It Am., Inc. et al.*, Civ. No. 10-00614 DAE-KSC.

Access subsequently filed two separate state actions -- one by Access, SIH, and Edward MacNaughton against SIA seeking to enjoin SIA's efforts to force arbitration on the basis that the Franchise Agreement is void, *Access Info. Mgmt. of Haw., LLC et al. v. Shred-It Am., Inc. et al.*, Civ. No. 10-00621 DAE-LEK; and also this action by Access against Defendants alleging claims for unfair methods of competition and misconduct. SIA removed both these state actions, and Access currently seeks remand of both actions.

In the meantime, on September 24, 2010, SIA filed its own action against MacNaughton, SIH, Access, and various other individual defendants alleging, among other things, that SIH and MacNaughton breached their

commitments under the Franchise Agreement by selling assets to Access, and that defendants misappropriated trade secrets and are infringing SIA's trademarks. *See Shred-It Am., Inc. v. MacNaughton et al.*, Civ. No. 10-00547 DAE-KSC.

**B.     Basis of Removal**

To support its removal of this action, SIA asserts that this action relates to the Franchise Agreement, which is governed by the New York Convention. The Franchise Agreement explains that Shred-It Canada Corporation ("SICC") developed a proprietary system regarding the establishment, development, and operation of a shredding and recycling business, and that Shred-It Franchise, Inc. ("SIFI") owns the proprietary marks related to this business. The Agreement further explains that SICC granted SIA a license to use this system, and that SIFI granted SIA a license to use its proprietary marks for franchising in the United States. Notice of Removal Ex. A, Franchise Agreement at 1.

Under the Franchise Agreement, SIA, a corporation organized in Nevada whose principal place of business is in California, granted MacNaughton, in trust for what later became SIH, the right to operate a Shred-It franchise business in the City and County of Honolulu. *Id.* at 33. Under the Franchise Agreement, SIA agrees to, among other things, provide SIH training, marketing support, and general assistance in arranging for working capital loans, leasing and/or purchasing of

trucks, and related financing assistance. *Id.* at 4-6. In return, SIH agrees to, among other things, conduct its franchise in compliance with the Shred-It system, subject its General Manager to SIA's management training program, and cause its employees to complete additional training. *Id.* at 7-9.

The Franchise Agreement provides that it is to be interpreted and construed pursuant to California Law to the extent not governed by the Lanham Act, and that any action must be brought in Orange County, California. *Id*. at 30. The Franchise Agreement further provides that all disputes shall be determined through arbitration under the rules of the American Arbitration Association. *Id.*

SIA asserts that SIH and SIA have connections to Canada, including that: (1) the Franchise Agreement was executed in Canada and signed by a Canadian citizen on behalf of SIA; (2) all payments made under the Franchise Agreement are made to SIA's corporate office in Canada; (3) all shredding trucks required to be purchased under the Agreement are manufactured and sold in Canada; (4) all SIA employees administering the Franchise Agreement and all SIA corporate officers are based in the Canada corporate office; (5) all records related to the Franchise Agreement are kept in the Canada corporate office; (6) SIA conducts various meetings, trainings, and conferences in its Canada corporate office; (7) all aspects of directing, controlling, and coordinating the Franchise Agreement are

completed in the Canada corporate office; and (8) Access has referred to the fact that SIA is a company based in Canada in its marketing materials to customers. Notice of Removal Ex. B, Jim Rudyk Decl. and Rudyk Decl. Ex. B.

### III. DISCUSSION

SIA asserts that the Franchise Agreement provides the court jurisdiction over this action pursuant to 9 U.S.C. § 203. The court first outlines the relevant framework, and then applies the framework to the facts presented.

**A.  Framework**

In general, "a defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441). With that said, however, "'[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Id.* (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (alterations in original); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Accordingly, the court must "resolve[] all ambiguity in favor of remand to state court." *Hunter*, 582 F.3d at 542 (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

The basis for jurisdiction that SIA identifies -- 9 U.S.C. § 203,[1] provides that the court has original jurisdiction over "an action or proceeding falling under the [New York Convention]." Section 202 outlines when an agreement falls under the New York Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

In turn, 9 U.S.C. § 205 creates special removal rights for actions implicating the New York Convention, and is "one of the broadest removal provisions . . . in the statute books." *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006). Specifically, § 205 provides for the removal of

---

[1] The Notice of Removal also asserts that this court has federal question jurisdiction to the extent Access has alleged claims for federal trademark infringement. Notice of Removal ¶ 9. The court rejects this argument out of hand -- the Complaint does not implicate such claims. *See also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) ("When a claim can be supported by alternative and independent theories -- one of which is a state law theory and one of which is a federal law theory -- federal question jurisdiction does not attach because federal law is not a necessary element of the claim.").

actions relating to such agreements:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

As explained in *Banco de Santander Central Hispano v. Consalvi International Inc.*, 425 F. Supp. 2d 421, 427 (S.D.N.Y. 2006), there are three main differences between 9 U.S.C. § 205 and 28 U.S.C. § 1441: (1) § 205 permits removal at any time before trial as opposed to requiring removal within thirty days after service; (2) § 205 does not require that jurisdiction appear on the face of the complaint but rather can be shown in the petition for removal; and (3) § 205 permits removal where the action relates to an arbitration agreement, while § 1441 grounds removal on the pre-existence of original jurisdiction. Despite these differences, removal pursuant to § 205 applies the same procedure, meaning that the removing party retains the burden to prove this court's jurisdiction. *See Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 2009 WL 440477, at *4 (N.D. Cal. Feb. 23, 2009) (citing *Beiser v. Weyler*, 284 F.3d 665, 666 (5th Cir. 2002)).

In sum, SIA has the burden to show both that (1) the Franchise Agreement "falls under" the New York Convention, and (2) the parties' dispute "relates to" the Franchise Agreement. *See id.* (citing *Beiser*, 284 F.3d at 666)).

**B.  Application**

Upon consideration of the Notice of Removal and the parties' briefing, the court finds that SIA has failed to carry its burden of establishing that the Franchise Agreement falls under the New York Convention.[2]

Pursuant to 9 U.S.C. § 202, an arbitration agreement falls under the Convention if (1) there is a written agreement to arbitrate; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship that is considered commercial; and (4) one party is not a U.S. citizen, or the commercial relationship at issue involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. *See also Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (outlining elements).

---

[2] Because SIA must prove both that the Franchise Agreement falls under the New York Convention *and* that the parties' dispute relates to the Franchise Agreement, the court need not address whether the parties' dispute relates to the Franchise Agreement. The court also need not address SIA's suggestion that it needs discovery regarding the SIH and Access' relationship, as SIA asserts the need for this discovery in relation to proving whether the parties' dispute relates to the Franchise Agreement. *See* SIA's Opp'n at 11. In any event, however, it appears that discovery is not appropriate in determining whether removal was appropriate. *See Beiser v. Weyler*, 284 F.3d 665, 670-71 (5th Cir. 2002) (finding that removal pursuant to 9 U.S.C. § 205 should be determined based on the pleadings alone).

The parties do not dispute that the first three elements are met in this case. Further, as to the fourth element, the parties do not dispute that both SIH and SIA are U.S. companies.[3] Accordingly, to establish that the Franchise Agreement falls under the New York Convention, SIA must show that the relationship between SIA and SIH "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *See* 9 U.S.C. § 202. SIA does not argue that its relationship with SIH involves property located abroad or envisages performance and/or enforcement abroad, but rather argues only that its relationship with SIH has "some other reasonable relation" to Canada.

The focus of whether a commercial relationship has a reasonable relation to a foreign state is not on the Franchise Agreement alone, but rather the "legal relationship in which the arbitration agreement or arbitral award arises." *Ensco Offshore Co. v. Titan Marine LLC*, 370 F. Supp. 2d 594, 601 (S.D. Tex.

---

[3] While SIA is a wholly-owned subsidiary of a Canadian corporation and a Canadian citizen signed the Franchise Agreement on behalf of SIA, *see* Notice of Removal, Ex. B Rudyk Decl. ¶¶ 3-4, that does not change that the two parties to the agreement -- SIA and SIH -- are both U.S. companies. *See, e.g.*, *Overturf v. Deutsche Bank AG*, 2006 WL 2848102, at *8 (N.D. Tex. Oct. 5, 2006) (explaining that "[a]lthough the accounts were used to execute various trades with Deutsche Bank AG, a German corporation, Deutsche Bank AG was not a party to the agreements. Thus the account agreements were only between citizens of the United States"); *Ling v. Deutsche Bank AG*, 2005 WL 3158040, at *7 (E.D. Tex. Nov. 28, 2005) (finding that agreement was between U.S. citizens because the fact that one party is a "subsidiary of a foreign entity is of little consequence since the domestic subsidiary, rather than the foreign entity, was the signatory and party to the agreements").

2005); *see also Amato v. KPMG LLP*, 433 F. Supp. 2d 460, 478 (M.D. Pa. 2006) ("[T]he relevant jurisdictional inquiry is not whether an arbitration agreement itself envisages performance abroad, but whether the relationship out of which the agreement arose envisages performance abroad."), *order vacated in other part on reconsideration by* 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006).

Courts have characterized this requirement as necessitating an "important foreign element." This construction is based on the legislative history, in which testimony before the Senate Foreign Relations Committee explained that:

> We have included in section 202 a requirement that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved, such as property located abroad, the performance of a contract in a foreign county (sic), or a similarly reasonable relation with one or more foreign states. The reasonable relationship criterion is taken from the general provisions of the Uniform Commercial Code. Section 1-105(1) of the code permits the parties to a transaction that bears a reasonable relationship to any other state or nation to specify that the law of that state or nation will govern their rights and duties.[4]

*See Jones v. Sea Tow Servs., Inc.*, 30 F.3d 360, 365 (2d Cir. 1994) (quoting S. Rep.

---

[4] In turn, the comments to U.C.C. § 1-105, the choice of law provision, explain that "[o]rdinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs." U.C.C. § 1-105 (Official Comment). The comments further explain that this "reasonable relationship" test is similar to that in *Seeman v. Philadelphia Warehouse Company*, 274 U.S. 403 (1927), which refers to the performance under a contract bearing a "normal relation to the transaction" and having a "natural and vital connection with the transaction."

702, 91st Cong., 2d Sess. app. at 6 (1970)); *see also Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 340 (5th Cir. 2004) (finding that the New York Convention may apply so long as "there is a 'reasonable relation' between the parties' commercial relationship *and* some 'important foreign element.'" (emphasis added)); *see also Ensco Offshore Co.*, 370 F. Supp. 2d at 601 ("Regardless of the interpretation one uses, the clear intent was that the "legal relationship" be commercial in nature and that the legal relationship involve property, performance, or enforcement in some foreign state."). Indeed, requiring that the relationship have an important foreign element comports with the very purpose of the New York Convention, which is "to encourage the recognition and enforcement of commercial arbitration agreements *in international contracts* and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) (emphasis added); *see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120 (9th Cir. 2002).

Applying these principles, the court finds that SIA has not carried its burden of establishing that its relationship with SIH, as created by the Franchise Agreement, involves a foreign element sufficient to support application of the New York Convention. The Franchise Agreement did not involve property,

performance, or enforcement in Canada -- rather, the Agreement is between two U.S. entities, contemplates the grant of certain rights to SIH for SIH's use in the United States, and provides that disputes are governed by California and/or federal law and should be brought in California.  *Compare Lander Co. v. MMP Inv., Inc.*, 107 F.3d 476, 480-81 (7th Cir. 1997) (finding that the New York Convention applies to an arbitration agreement between two U.S. companies where the agreement was for distribution of products in Poland); *with Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1367 (S.D. Fla. 2009) (finding that the relationship between a singer and cruise ship which toured the Bahamas was not reasonably related to the Bahamas because the legal relationship, defined by the agreement, presented only a superficial connection to the Bahamas).

The links to Canada that SIA has pointed to are superficial at best, and do not establish an important foreign element in the relationship between SIH and SIA.  First, it is irrelevant to the inquiry that SIA is a wholly-owned subsidiary of a Canadian corporation, that SIA holds rights granted to it by Canadian corporations, or that SIH and MacNaughton knew that the SHRED-IT® franchise was developed by Shred-It Canada.  No Canadian corporation was a party to the Franchise Agreement, and SIA presented no evidence that any Canadian corporation either participated in the formation of the Franchise Agreement or otherwise contributed

directly to the legal relationship between SIA and SIH.  *See RA Inv. I, LLC v. Smith & Frank Grp. Servs.*, 2005 WL 3299710, at *5 (E.D. Tex. Dec. 5, 2005) (finding one party's relationship to a foreign company not a party to agreement "irrelevant").

    Second, the actual connections SIA asserts that SIH has to Canada are superficial at best and result simply from the manner in which SIA structured its corporate offices.  Specifically, SIA maintains its corporate office in Canada such that all of its employees administering the Franchise Agreement are located in Canada, the records related to the Franchise Agreement are kept in Canada, all aspects of directing, controlling, and coordinating the Franchise Agreement by SIA are completed in Canada, SIA conducts various meetings, trainings, and conferences in its corporate offices in Canada, and SIH makes payments to Canada.  These actions are wholly unilateral on the part of SIA -- the Franchise Agreement does not evidence that the parties contemplated these connections to Canada and the location SIA chooses for its corporate offices does not affect the parties' performance under the Franchise Agreement.  At most, these connections to Canada are tangential to SIA's ultimate provision of services under the Agreement -- the Franchise Agreement is focused on granting SIH rights to conduct business in Hawaii.  While the Franchise Agreement contemplates that SIA would provide certain services to SIH, that SIA ultimately chose to provide those services from

14

Canada does not suddenly inject an important foreign element into the parties' relationship. *See Wilson v. Lignotock U.S.C., Inc.*, 709 F. Supp. 797, 799 (E.D. Mich. 1989) (finding that where employment contract was for plaintiff to build up sales, marketing, and distribution certain products in Detroit, fact that plaintiff made several trips to Europe for business did not make the contract fall under the New York Convention).

Finally, the court rejects as irrelevant SIA's other arguments that the Franchise Agreement is reasonably related to Canada. For example, SIA points to the fact that SIA and SIH entered into a confidentiality agreement that applied Ontario law, but whether the parties entered into any other agreements does not change that application of the New York Convention is determined from SIA and SIH's legal relationship in which the Franchise Agreement arose. Given that the Franchise Agreement included an integration clause, *see* Notice of Removal Ex. A, Franchise Agreement at 29, SIA has failed to show how any other agreements impact the parties' legal relationship. SIA also argues that the American Arbitration Association has assigned the dispute between SIA and SIH to the International Centre for Dispute Resolution, but the court must determine for itself whether the Notice of Removal establishes that the New York Convention applies to the Franchise Agreement. As explained above, SIA has failed to carry its burden.

In sum, the court finds that SIA has failed to establish that its relationship with SIH is sufficiently "reasonably related" to Canada to invoke the New York Convention. *See Ensco Offshore Co.*, 370 F. Supp. 2d at 601 (rejecting that the New York Convention applies where "[t]he United States is the only country with a vested interest in this dispute"); *see also Matabang*, 630 F. Supp. 2d at 1367 (rejecting that the New York Convention applies where "the facts of this case fall outside the letter and spirit of the implementing legislation to the New York Convention"). Accordingly, the court finds that SIA has failed to carry its burden of establishing a basis of jurisdiction. The court therefore GRANTS Plaintiffs' Motion to Remand.

///

///

///

///

///

///

///

///

## IV.  **CONCLUSION**

Based on the above, the court GRANTS Plaintiff's Motion to Remand and REMANDS this action to the First Circuit Court of the State of Hawaii.  The Clerk of Court is directed to close this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 2, 2010.



   /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Access Info. Mgmt. of Haw. LLC v. Shred-It Am., Inc. et al*, Civ. No. 10-00622 JMS/KSC, Order Granting Plaintiff's Motion to Remand